# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:12cv86

| | |
|---|---|
| **THE UNITED STATES OF AMERICA,** ) <br> **For the use and benefit of LW** ) <br> **CONSTRUCTION OF CHARLESTON,** ) <br> **LLC,** ) <br> ) <br>     **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **THE HANOVER INSURANCE** ) <br> **COMPANY** ) <br>     **Defendants.** ) <br> _____ ) | **MEMORANDUM AND** <br> **RECOMMENDATION** |

Pending before the Court is Defendant The Hanover Insurance Company's ("Hanover Insurance") Motion to Dismiss [# 22]. Plaintiff brought this action against Defendant Hanover Insurance asserting claims pursuant to the Miller Act, for payment pursuant to a performance bond, and for alleged violations of the North Carolina Unfair Deceptive Trade Practices Act.[1] The Plaintiff's original complaint presented various causes of action against Southern Mechanical of the Carolinas, Inc., Chad Cooke, individually, and The Hanover Insurance Company. (#1) On June 22, 2012 Plaintiff filed an amended complaint which deleted the

---

[1] Plaintiff brought this action in the name of the United States for the use of LW Construction of Charleston, LLC, as required by the Miller Act. 40 U.S.C. § 3133(b)(3)(A). The Court, however, shall refer to the case as having been brought by Plaintiff LW Construction of Charleston, LLC.

-1-

claims against Defendant, Chad Cooke.(#21) On January 23, 2013, Plaintiff and Defendant Southern Mechanical of the Carolinas, Inc. filed a Stipulation of Dismissal as to the claims against Southern Mechanical of the Carolinas, Inc. (#32) The causes of action still pending against Defendant The Hanover Insurance Company only are: "Third Cause of Action for Recovery Under the Miller Act"; "Fourth Cause of Action for Action on Performance Bond"; and "Fifth Cause of Action for Unfair Deceptive Trade Practices Act." Defendant The Hanover Insurance Company moves to dismiss the claims brought pursuant to the Miller Act and the Unfair and Deceptive Trade Practices Act. The Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss [# 22].

I. **Background**

Plaintiff LW Construction of Charleston, LLC ("LW Construction") is a South Carolina company engaged in the business of general contracting. (Pl.'s Am. Compl. ¶ 2.) The United States Department of Veteran Affairs ("United States") entered into a prime contract with Plaintiff LW Construction to replace the Boiler Plant at the Veterans' Administration Medical Center in Asheville, North Carolina (the "Project"). (Id. ¶¶ 1, 7.) Plaintiff LW Construction then entered into a subcontract with Defendant Southern Mechanical of the Carolinas, Inc. ("Southern Mechanical") to perform the mechanical, electrical, and plumbing work

associated with the Project.  (Id. ¶¶ 1, 3, 8, 32.)

Pursuant to the subcontract, Defendant Southern Mechanical obtained a Labor and Material Payment and Performance Bond in the amount of $3,127,000.00.  (Id. ¶¶ 9, 40; Ex. A to Pl.'s Am. Compl. at § 13.7; Ex. B to Pl.'s Am. Compl. at p. 1.)  These bonds were issued by Defendant Hanover Insurance Company ("Hanover Insurance") for the protection of Plaintiff LW Construction, as well as the suppliers and subcontractors providing labor and material to Southern Mechanical.  (Pl.'s Am. Compl. ¶¶ 9.)  The bonds named Defendant Hanover Insurance as the Surety, Defendant Southern Mechanical as the Principal, and Plaintiff LW Construction as the Obligee.  (Id. ¶ 42.)

Defendant Southern Mechanical, however, failed to carry out its contractual obligations as set forth in the subcontract, and eventually abandoned the Project.  (Id. ¶¶ 10-11, 18, 33-34, 44.)  In addition to failing to complete the agreed upon work, Plaintiff LW Construction contends that much of the work Defendant Southern Mechanical completed prior to abandoning the project was defective.  (Id. ¶¶ 28, 46, 69.)  Defendant Southern Mechanical is now insolvent and no longer a going concern.  (Id. ¶ 56.)

As a result of the failure to perform of Defendant Southern Mechanical, Plaintiff LW Construction contends that Defendant Hanover Insurance is liable

under the terms of the bonds to compensate it for the costs of completing and/or correcting the deficient work Defendant Southern Mechanical agreed to perform in the subcontract, as well as other damages stemming from Defendant Southern Mechanical's default. (Id. ¶¶ 48-51.) Plaintiff LW Construction also contends Defendant Hanover Insurance is liable under the Miller Act for these costs and damages. (Id. ¶¶ 31-38.)

Finally, Plaintiff contends that Defendant Hanover Insurance is liable pursuant to the North Carolina Unfair Deceptive Trade Practices Act. Plaintiff LW Construction alleges that Defendant Hanover Insurance failed to act with any promptness in taking a position under the bonds, delayed payment to contractors for the completion of the work, and engaged in a prolonged investigation of the matter. (Id. ¶¶ 62-68.) Defendant Hanover Insurance allegedly undertook these efforts to delay payment pursuant to the terms of the bonds in an attempt to "destabilize LW and to place LW in a position where it would be so desperate to settle the Bond claim that Hanover Insurance could more cheaply satisfy LW's claim on the Bond." (Id. ¶ 70; see also id. ¶ 72.) Moreover, Plaintiff LW Construction contends that the investigation undertaken by Defendant Hanover Insurance was an effort by Defendant Hanover Insurance to delay compensating it under the terms of the bonds. (Id. ¶ 73.)

Defendant Hanover Insurance now moves to dismiss the claims brought pursuant to the Miller Act and the North Carolina Unfair and Deceptive Trade Practices Act. Defendant Hanover Insurance does not move to dismiss Count Four, which asserts the claim for compensation under the terms of the bonds. Defendant Hanover Insurance's Motion to Dismiss is now properly before this Court for a Memorandum and Recommendation to the District Court.

**II.     Legal Standard**

The central issue for resolving a Rule 12(b)(6) motion is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering a defendant's motion to dismiss, the Court accepts the allegations in the complaint as true and construes them in the light most favorable to plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The complaint need not contain "detailed factual allegations," but must

contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007); see also Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. ____, 129 S. Ct. 1937, 1949 (2009).

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. ____, 129 S. Ct. at 1949; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that the defendants acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claims from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

### III. Analysis

#### A. The Amended Complaint Fails to State a Miller Act Claim

The purpose of the Miller Act is to protect the United States, see 40 U.S.C. § 3131(b)(1), as well as the labors and subcontractors that perform work on a public building or public work of the Federal Government or provide materials for these same projects, 40 U.S.C. § 3131(b)(2). As such, it requires prime or general contractors such as Plaintiff to secure a performance bond and a payment bond prior to being awarded a federal contract in excess of $100,000 "for the construction, alternation, or repair of any public building or public work of the Federal Government." 40 U.S.C. §3131(b); see also Arrow Equip. & Servs., Inc. v. Travelers Cas. and Sur. Co. of Am., 417 F. App'x 366, 367 (4th Cir. 2011) (unpublished); United States ex rel. Damuth Servs., Inc. v. W. Sur. Co., 368 F. App'x 383, 384-85 (4th Cir. 2010) (unpublished). The performance bond is for the protection of the Government, 40 U.S.C. § 3131(b)(1), while the payment bond is "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person," 40 U.S.C. § 3131(b)(2). Thus, "[t]he Miller Act protects those who furnish labor or material for substantial federal public works contracts from defaults in payment by compelling the party awarded the government contract . . . to post a payment bond

against which the suppliers of labor or materials may claim in the event of such a default." United States of America ex rel. Global Bldg. Supply, Inc. v. WNH Ltd. P'ship, 995 F.2d 515, 517-18 (4th Cir. 1993).

The protections of the Miller Act are necessary because federal property is exempt from liens that serve to ordinarily protect subcontractors, labors, and suppliers in the case of non-payment by a contractor. Id.; see also Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 264, 119 S. Ct. 687, 692-93 (1999). Accordingly, a subcontractor may file suit under the Miller Act seeking payment from a surety on the payment bond furnished by the general contractor who contracted with the federal government where the subcontractor has not been paid within the time frame set forth in the statute. 40 U.S.C. § 3133(b)(1); see also Arrow Equip., 417 F. App'x at 367. The Miller Act contains no requirement that subcontractors also obtain bonds. See 40 U.S.C. § 3133.

The Miller Act has no application to the dispute between Plaintiff and Defendant Hanover Insurance. Plaintiff, not Defendant Southern Mechanical, entered into the prime contract with the United States to complete the Project. (Pl.'s Am. Compl. ¶¶ 1,7.) Plaintiff then subcontracted with Defendant Southern Mechanical to perform the mechanical, electrical, and plumbing work. (Id. ¶ 1, 8.) There are no allegations in the Amended Complaint that Defendant Southern

Mechanical was anything other than a subcontractor. Pursuant to the terms of the subcontract entered into between Plaintiff and Defendant Southern Mechanical, Defendant Southern Mechanical agreed to obtain a performance bond and payment bond to cover the amount of the subcontract. (Id. ¶¶ 9, 40; Ex. A to Pl.'s Am. Compl. at § 13.7.) Any obligation of Defendant Southern Mechanical to obtain a performance bond or payment bond arose by virtue of contract, not the Miller Act.

Moreover, the purpose of the Miller Act is not to protect prime contractors like Plaintiff from a default by its subcontractors. See generally, Global Bldg. Supply, 995 F.2d at 517-18. Instead, the prime contractor may protect its interest through contract by requiring, just as Plaintiff did in this case, that a subcontractor obtain bonds in order to protect its interest. As the United States Court of Appeals for the Fourth Circuit explained decades ago:

> Prime contractors well understand that they operate under the overhanging threat of Miller Act obligations that may arise against them if their subcontractors should fail to pay workers or materials men. Prime contractors can readily protect themselves against their subcontractors' defaults by making appropriate payment reservations or by exacting performance bonds; and we understand that these precautions are prevailing practices in the construction industry.

United States of America ex rel. Noland Co. v. Andrews, 406 F.2d 790, 794 (4th Cir. 1969) (emphasis added). Here, Plaintiff's remedy lies under the performance bond Defendant Hanover Insurance issued for the benefit of Plaintiff pursuant to

the terms of the subcontract, not pursuant to the Miller Act, which requires that a performance bond be issued for the benefit of the United States. See 40 U.S.C. § 3131(b)(1).

In fact, in response to the Motion to Dismiss, Plaintiff has not provided this Court with a citation to any case from any jurisdiction allowing a claim under the Miller Act by a prime contractor against a surety seeking to enforce either a performance or payment bond obtained by a <u>subcontractor</u> for the benefit of the <u>prime contractor</u>. Although Plaintiff relies on a district court decision from the United States District Court for the District of Arizona, <u>Sullivan v. Faras-RLS Grp., Ltd.</u>, 795 F. Supp. 305 (D. Az. 1992), <u>Sullivan</u> involved an action by suppliers of material and labor where the prime contractor failed to pay them for their work. 795 F. Supp. at 305. The issue before the Court in <u>Sullivan</u> was whether the project at issue was a public work and, thus, whether the prime contractor was required to furnish bonds pursuant to the Miller Act. Id. at 308-09. <u>Sullivan</u> has no bearing on this case as no party disputes the fact that the contract entered into between Plaintiff and the United States was to repair a public building or public work of the United States. This government contract, however, only gave rise to Plaintiff's obligation under the Miller Act to obtain a performance bond for the benefit of the United States, as well as a payment bond to protect the

individuals supplying labor and material in carrying out the work provided for in the contract between Plaintiff and the United States.  As a subcontractor, Defendant Southern Mechanical was not obligated under the Miller Act to provide any such bonds; any obligation to do so arose solely from contract.  The bonds at issue in this dispute are not Miller Act bonds, and the Miller Act has no application to this dispute.  Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** Defendant Hanover Insurance's Motion to Dismiss as to Plaintiff's Miller Act claim and **DISMISS** Count Three.

> **B.** **The Amended Complaint Fails to State a Claim for Unfair and Deceptive Trade Practices**

In order to make out a *prima facie* case for unfair and deceptive trade practices pursuant to N.C. Gen. Stat. §75-1.1, a plaintiff must show that: (1) the defendant committed an unfair or deceptive act or practice; (2) that this act or practice was in or affecting commerce; and (3) that the act or practice proximately caused the plaintiff's injury.  Gray v. N.C. Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000); Hospira Inc. v. Alphagary Corp., 671 S.E.2d 7, 12 (N.C. Ct. App. 2009); Sessler v. March, 551 S.E.2d 160, 167 (N.C. Ct. App. 2001).  A practice is unfair if it "'is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers.'" Branch Banking and Trust Co. v. Thompson, 418 S.E.2d 694, 699 (N.C. Ct. App. 1992) (quoting Johnson v. Phoenix

Mut. Life Ins. Co., 266 S.E.2d 610, 621 (N.C. 1980)); Sessler, 551 S.E.2d at 167. A practice is deceptive where it has the tendency or capacity to deceive. Thompson, 418 S.E.2d at 699; Sessler, 551 S.E.2d at 167.[2]

It is well settled in North Carolina, however, that an action for unfair and deceptive trade practices is distinct from a breach of contract action, Birtha v. Stonemore, N.C., LLC, 727 S.E.2d 1, 10 (N.C. Ct. App. 2012); Nucor Corp. v. Prudential Equity Grp., LLC, 659 S.E.2d 483, 488 (N.C. Ct. App. 2008); Norman v. Loomis Fargo & Co., 123 F. Supp. 2d 985, 989 (W.D.N.C. 2000) (Horn, Mag. C.J.), and "that conduct carried out pursuant to contractual relations rarely violates the UTPA," South Atlanta Ltd. P'ship of Tenn, LP, v. Riese, 284 F.3d 518, 536 (4th Cir. 2002). In fact, even an intentional breach of a contract is not sufficient to constitute a claim for unfair and deceptive trade practices. South Atlanta, 284 F.3d at 536; Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998); Norman, 123 F. Supp. 2d at 989; Birtha, 727 S.E.2d at 10; Nucor Corp., 659 S.E.2d at 488. Rather, a plaintiff must allege facts demonstrating

---

2 Although in the insurance context, a plaintiff can establish a Chapter 75 claim for unfair and deceptive trade practices by showing a violation of North Carolina's Insurance Unfair Trade Practices Act (the "IUTPA"), see ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 123 (4th Cir. 2006), the same is not true in the surety context, Cincinnati Ins. Co. v. Centech Bldg. Corp., 286 F. Supp. 2d 669, 689-90 (M.D.N.C. 2003); Henry Angelo & Sons, Inc. v. Prop. Dev. Corp., 306 S.E.2d 162, 167-68 (N.C. Ct. App. 1983); Rutherford Cnty. v. Bond Safeguard Ins. Co., No. 1:09cv292, 2011 WL 809821, *7 (W.D.N.C. Mar. 2, 2011).

"substantial aggravating circumstances attending the breach" to state a claim. Nucor Corp., 659 S.E.2d at 488 (internal quotation omitted); see also Broussard, 155 F.3d at 347; Norman, 123 F. Supp. 2d at 989.

The Amended Complaint fails to contain sufficient factual allegations demonstrating substantial aggravating circumstances to state a claim for unfair and deceptive trade practices. The essence of Plaintiff's claim is that Defendant Hanover Insurance failed to act with "reasonable promptness" and failed to "promptly take action" to provide Plaintiff relief as specified in the bonds. (Pl.'s Am. Compl. ¶¶ 61, 66.) Instead of acting promptly, Plaintiff contends that Defendant Hanover Insurance undertook an unnecessary investigation that delayed any potential payment under the bond and forced Plaintiff to pay contractors out of pocket to complete the work that it contracted with Defendant Southern Mechanical to perform. ( See e.g. id. ¶¶ 62, 64, 68, 74.) Even assuming that Defendant Hanover intentionally breached the terms of the bonds and failed to provide payment to contractors or to Plaintiff as Plaintiff contends Defendant Hanover Insurance was obligated to do, such allegations are insufficient to give rise to a Chapter 75 claim. See South Atlanta, 284 F.3d at 536; Broussard,155 F.3d at 347; Norman, 123 F. Supp. 2d at 989; Birtha, 727 S.E.2d at 10; Nucor Corp., 659 S.E.2d at 488. Put simply, the Amended Complaint fails to set forth

factual allegations demonstrating the level of substantial aggravating circumstances necessary to elevate a contractual dispute over a surety performance bond into a tort. Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss as to Count Five.

**IV.    Conclusion**

The Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss [# 22] and **DISMISS** Counts Three and Five.

Signed: February 4, 2013

Dennis L. Howell
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).